Warren R.Paboojian, No. 128462
wrp@bplaw-inc.com
Jason S. Bell, No. 213234
jsb@bplaw-inc.com
BARADAT & PABOOJIAN, INC.
720 West Alluvial Avenue
Fresno, California 93711
Telephone: (559) 431-5366
Facsimile: (559) 431-1702

Attorneys for Plaintiffs
MARX FORD, individually
and as Successor in Interest to the
Estate of Gennie Price, deceased;
RODNEY FORD; MARVIN FORD;
and MORRIS FORD

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MARX FORD, individually and as Successor in Interest to the Estate of Gennie Price, deceased; RODNEY FORD; MARVIN FORD; and MORRIS FORD,

Plaintiffs,

vs.

REDWOOD SPRINGS HEALTHCARE CENTER; SPRUCE HOLDINGS, LLC; and DOES 1 to 50, inclusive,

Defendants.

Case No. 1:21-cv-00871-NONE-SAB

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION TO REMAND**

**HEARING:**

**DATE**: August 5, 2021
**TIME**: 9:30 a.m.
**COURTROOM**: 4

# TABLE OF CONTENTS

Page(s)

I. INTRODUCTION . . . . . 1

II. FACTUAL AND PROCEDURAL BACKGROUND . . . . . 1

III. ARGUMENT AND AUTHORITY . . . . . 2

A. Legal Standard for Removal . . . . . 2

B. The PREP Act and Subsequent District Court Decisions . . . . . 4

C. There is No Federal Question Presented in Plaintiffs' Complaint and the PREP Act Does Not Provide for Complete Preemption . . . . . 5

1. A Defendant Cannot "Create" Federal Jurisdiction by an Artful Rewording of the Complaint . . . . . 5

2. Case Law and the PREP Act Text Itself Shows That the PREP Act Does Not Preempt State Law; Arguments That it Does Are Poorly Reasoned, and the OGC's Advisory Opinion Is Unpersuasive . . . . . 5

D. There Are No "Important Federal Issues" Which Could Support Retaining Federal Jurisdiction Pursuant to the *Grable* Doctrine . . . . . 9

E. Redwood Springs Has Not Established Any Basis for Federal Officer Jurisdiction . . . . . 10

IV CONCLUSION . . . . . 12

BARADAT & PABOOJIAN
720 West Alluvial Avenue
Fresno, CA 93711

# TABLE OF AUTHORITIES

**Cases**: Page(s)


*Bolton v. Gallatin Ctr. for Rehab. & Healing, LLC*, No. 3:20-CV-00683, 2021 U.S. Dist. LEXIS 76193, 2021 WL 1561306 . . . . . . . . . . 9

*Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) . . . . . . . . . . 3, 5

*Devon Energy Prod. Co. v. Mosaic Potash Carlsbad, Inc.*, 693 F.3d at 1195 (10th Cir. 2012). . . . . . . . . . 7

*Dupervil v. All. Health Operations, LLC*, No. 20CV4042, 2021 U.S. Dist. LEXIS 20257, 2021 WL 355137 (E.D.N.Y. Feb. 2, 2021). . . . . . . . . . 8, 9, 11

*Est. of Jones through Brown v. St. Jude Operating Co.*, LLC, No. 3:20-CV-1088-SB, 2021 U.S. Dist. LEXIS 43222, 2021 WL 886217 . . . . . . . . . . 8

*Est. of Maglioli v. Andover Subacute Rehab. Ctr. I*, 478 F. Supp. 3d 518, 528 (D.N.J. 2020) . . . . . . . . . . 4, 7, 11

*Fidelitad, Inc. v. Insitu, Inc.*, 904 F.3d 1095, 1099 (9th Cir. 2018) . . . . . . . . . . 3

*Grable & Sons Metal Products v. Darue Engineering & Mfg.*, 545 U.S. 308 (2005) . . . . . . . . . . 3, 4, 9, 10

*Guas v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) . . . . . . . . . . 3

*Gully v. First National Bank*, 299 U.S. 109, 112-113 (1936). . . . . . . . . . 3

*Holman v. Laulo-Rowe Agency*, 994 F.2d 666, 668 (9th Cir. 1993) . . . . . . . . . . 6

*Khalek v. S. Denver Rehab*, Dist. Colo., 2021 U.S. Dist. Lexis 113165 . . . . . . . . . . 1, 4, 7, 8, 11

*Lecce v. Medtronic, Inc.*, 2019 U.S. Dist. LEXIS 112731 . . . . . . . . . . 10

*Lyons v. Cucumber Holdings, LLC*, No. CV2010571, 2021, WL 364640, 2021 WL 364640 . . . . . . . . . . 11

*Marin General Hosp. v. Modesto & Empire Traction*, 581 F.2d 941, 945 (9th Cir. 2009) . . . . . . . . . . 3

*Martin v. Serrano Post Acute LLC*, No. CV 20-5937 DSF (SKX), 2020 WL 5422949 . . . . . . . . . . 4, 7, 11

*McCalebb v. AG Lynwood, LLC*, No. 2:20-v-09746, 2021 WL 911591 . . . . . . . . . . 9

*Rachal v. Natchitoches Nursing & Rehab. Ctr. Llc*, 2021 U.S. Dist. LEXIS 105847 (W.D. La. Apr. 30, 2021) . . . . . . . . . . 8

*Schmeling v. NORDAM*, 97 F.3d 1336, 1340 (10th Cir. 1996) . . . . . . . . . . 7

*Schuster v. Percheron Healthcare, Inc.*, 493 F. Supp. 3d 533, 537 (N.D. Tex. 2021) . . . . . . . . . . 7, 8


BARADAT & PABOOJIAN
720 West Alluvial Avenue
Fresno, CA 93711

*Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S. Ct. 161, 89 L. Ed. 124 (1944) . . . . . . . . 8

*Smith v. Colonial Care Ctr., Inc.*, No. 2:21-CV-00494-RGK-PD, 2021 U.S. Dist. LEXIS 53554, 2021 WL 1087284 . . . . . . . . 8

*TPS Utilicom Servs. v. AT&T Corp.*, 223 F.Supp. 1089, 1097-1098 . . . . . . . . 6

*Watson v. Phillip Morris Cos.*, 551 U.S. 142, 150 . . . . . . . . 10, 11

**Codes**:

28 U.S.C. § 1331 . . . . . . . . 5

28 U.S.C. § 1441 . . . . . . . . 3

28 U.S.C. § 1442(a)(1) . . . . . . . . 3, 10

28 U.S.C. § 1447(c) . . . . . . . . 1, 2

42 U.S.C. § 247d-6d(a) . . . . . . . . 6

42 U.S.C. § 247d-6d(a)(1) . . . . . . . . 4

42 U.S.C. § 247d-6d(b) . . . . . . . . 4, 5

42 U.S.C. § 247d-6d(b)(8) . . . . . . . . 4, 7

42 U.S.C. § 247d-6d(d)(1) . . . . . . . . 7

42 U.S.C. § 247d-6e . . . . . . . . 4, 7

85 Fed. Reg. 15198 . . . . . . . . 4, 6

85 Fed. Reg. 79196 . . . . . . . . 4

85 Fed. Reg. 79197-8 . . . . . . . . 4

**Acts/Miscellaneous**:

Federal Food, Drug, and Cosmetic Act . . . . . . . . 6

Public Readiness and Emergency Preparedness (PREP) Act . . . . . . . . 2, 3, 4, 5, 6, 7, 8, 9

BARADAT & PABOOJIAN
720 West Alluvial Avenue
Fresno, CA 93711

Pursuant to 28 U.S.C. § 1447(c), Plaintiffs MARX FORD, individually and as the Successor in Interest to the Estate of Gennie Price, RODNEY FORD, MARVIN FORD, and MORRIS FORD ("Plaintiffs"), respectfully submit the following Memorandum of Points and Authorities in Support of their Motion to Remand this case to Superior Court for lack of subject matter jurisdiction.

**I.**

**INTRODUCTION**

Plaintiffs are family members of Gennie Price, who died of COVID-19 while in the care of nursing home Defendant, REDWOOD SPRINGS HEALTHCARE CENTER ("Redwood Springs") in Tulare County, California. Plaintiffs subsequently filed a Complaint alleging Elder Abuse, Willful Misconduct and Wrongful Death in Tulare County Superior Court; Redwood Springs removed the case to this Court, claiming federal officer jurisdiction and federal question jurisdiction.

There is no basis for removal here, and Plaintiffs move this Court to remand the case to Superior Court. In fact, the "overwhelming majority" of district courts faced with this exact issue are remanding Covid-related nursing home state negligence cases back to the state courts they belong in. See, e.g. *Khalek v. S. Denver Rehab*, Dist. Colo., 2021 U.S. Dist. Lexis 113165, *13-14 [noting more than sixty district courts have reviewed this issue, and all "but two" have remanded claims to state court].

These state law negligence claims belong in State court, and Plaintiffs respectfully request the Court grant this Motion to Remand.

**II.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Gennie Price died on or about April 22, 2020, at Redwood Springs Healthcare Center from COVID-19. Ms. Price had been a patient at the facility for approximately a year at the time of her death; she was 5 days shy of her 80th birthday. (Complaint, Doc. 1-3, ¶¶ 1, 7, 13.)

By April of 2020, it was universally known that COVID-19 posed a very serious danger to elderly people and that nursing homes were particularly susceptible to killing their own residents if they did not take immediate action to protect them from COVID. It was also universally known that requiring employees and visitors to use Personal Protective Equipment (face masks, gloves and gowns), testing employees and residents, and isolating non-COVID-19 residents and employees from residents known

or suspected to be infected with the virus was required to keep the elderly residents safe. (Complaint, Doc. 1-3 ¶ 10.)

Redwood Springs did not do, and is not alleged to have done, any of these things. In fact, it entirely failed to take appropriate safety measures and, even worse, when it did become aware of infected residents or employees, it failed to notify family members or other employees, and even required known infected or symptomatic employees to attend work. (Complaint, Doc. 1-3 ¶ 12.)

During this time, on multiple occasions Redwood Springs assured Ms. Prices' family that she was safe in the facility and that all safety precautions were being taken to protect her from COVID-19. However, she tested positive for COVID-19 on or about April 20, 2020, and despite Redwood Springs staff repeatedly telling Ms. Prices' family that she was "fine," she died on April 28, 2020. Redwood Springs ultimately had almost 200 COVID cases in its facility, with 29 deaths. (Complaint, Doc. 1-3 ¶¶ 12-16.)

Plaintiffs subsequently filed this elder abuse and wrongful death case in Tulare County Superior Court, asserting *only state law claims*. Like every other wrongful death and elder abuse case arising out of the California Welfare and Institutions Code, it belongs in Superior Court. Nevertheless, Redwood Springs has removed the case to federal court. They claim this Court has "federal officer" jurisdiction and they make a preemption argument, contending the Public Readiness and Emergency Preparedness (PREP) Act completely occupies the field of any COVID-related case, preempting state law for ***all*** COVID-related cases.

Plaintiffs now timely request remand. 28 U.S.C. § 1447(c). Defendants' arguments for removal have been universally rejected by district courts around the country, and the matter should be remanded to Tulare County Superior Court.

## III.

## <u>ARGUMENT AND AUTHORITY</u>

### A. Legal Standard for Removal.

There is no inherent right to remove a case from state to federal court; a defendant's ability to change plaintiff's choice of forum arises entirely from statute, and a defendant has the burden to show

///

the matter presents a federal question. 28 U.S.C. 1441; see *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). To that end,

> "[t]he presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint. See *Gully v. First National Bank*, 299 U.S. 109, 112-113 (1936). The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." (*Ibid.*)

Removal statutes are strictly construed *against* removal jurisdiction; the Ninth Circuit emphasizes that federal jurisdiction must be rejected if there is any question regarding a defendant's ability to remove a case. *Guas v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). In fact, there is a strong presumption that removal is improper. (*Id.*)

Here, Redwood Springs asserts a variety of purported grounds for removal: (1) "complete" preemption under the PREP Act (Doc. 1-1, Removal Notice ¶¶ 8-70), (2) "important federal question" jurisdiction under *Grable* (Doc. 1-1, Removal Notice ¶¶ 71-77), and (3) "federal officer" jurisdiction pursuant to § 1442(a)(1) (Doc. 1-1, Removal Notice ¶¶ 78-98).

However, as set forth more fully below, "preemption" is generally an affirmative defense to a plaintiff's state law claims, and not a basis for removal jurisdiction. *Marin General Hosp. v. Modesto & Empire Traction*, 581 F.2d 941, 945 (9th Cir. 2009) ["complete" preemption required for federal question removal jurisdiction; otherwise the defense of federal preemption of a state-law claim appropriately made in state court]. Redwood Springs' assertion of "complete" preemption under the PREP Act is incorrect.

Similarly, the issues presented by Plaintiffs' Complaint do not rise to the level of an important federal question such that the *Grable* doctrine of allowing federal courts to resolve "substantial federal issues" should be invoked. And, finally, the "federal officer" jurisdiction alleged in the removal papers is equally baseless. As set forth herein, there is simply no fact or law to support Redwood Springs' claim that it was "acting at the direction of a federal officer" when they engaged in the tortious conduct. *Fidelitad, Inc. v. Insitu, Inc.*, 904 F.3d 1095, 1099 (9th Cir. 2018).

Accordingly, remand is appropriate.

///

**B. The PREP Act and Subsequent District Court Decisions.**

Congress passed the PREP Act in 1995, with the intent to give the Secretary of the Department of Health and Human Services (HHS) the authority to declare public health emergencies. 42 U.S.C. § 247d-6d(b). When it applies to a given situation, the PREP Act provides immunity to "covered persons" from all liability under state and federal law for "all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure …." 42 U.S.C. § 247d-6d(a)(1). The PREP Act requires causation between the injury and use of the applicable "countermeasure" and, when it applies, funnels plaintiffs into a federal regulatory program venued in the U.S. District Court for the District of Columbia to seek a remedy, if any is available. 42 U.S.C. § 247d-6e.

The Secretary of HHS has declared COVID-19 a public health emergency within the meaning of the Act, and issued numerous amendments to that declaration since March of 2020. 85 Fed. Reg. 15198. Those amendments have included defining "covered countermeasures" to include drugs, vaccines, N-95 masks and ventilators, among other things. 85 Fed. Reg. 79196. The Secretary's amendments have also purported to direct that HHS's Office of General Counsel's advisory opinions should be followed and referenced the *Grable* doctrine, ostensibly to indicate HHS's position that the PREP Act required uniform interpretation. 85 Fed. Reg. 79197-8.

Over the last year, at least sixty district courts throughout the country have examined the issue of federal jurisdiction over state law COVID-related nursing home negligence claims in federal court; ***all but two*** of them have concluded these state law claims belong in state court, including cases decided after the Office of General Counsel put out poorly reasoned advisory opinion arguing otherwise. See, e.g., *Khalek v. Denver Rehab.*, 2021 U.S. Dist. LEXIS 113165, *13-14 ["The overwhelming majority—all but two—found no complete preemption by the PREP Act. *E.g., Est. of Maglioli v. Andover Subacute Rehab. Ctr. I*, 478 F. Supp. 3d 518, 528 (D.N.J. 2020) (finding that 42 U.S.C. § 247d-6d(b)(8)] pertains to "conflict preemption" but does not mandate a federal forum or completely preempt all state law claims); *Martin v. Serrano Post Acute LLC*, No. CV 20-5937 DSF (SKX), 2020 WL 5422949, at *2 (C.D. Cal. Sept. 10, 2020) ("[M]ere immunity against state law or preemption of state law is not the equivalent of complete preemption and does not provide removal jurisdiction.").].

As set forth below, the overwhelming majority of district courts are, understandably and correctly, remanding these negligence cases to state courts. Plaintiffs respectfully requests this Court do the same.

**C. There Is No Federal Question Presented in Plaintiffs' Complaint and the Prep Act Does Not Provide for Complete Preemption.**

**1. A Defendant Cannot "Create" Federal Jurisdiction by an Artful Rewording of the Complaint.**

Defendants acknowledge that "on its face" the Plaintiffs' complaint in this case appears to "sound in state law." (Doc. 1-1, Notice of Remand, ¶ 39.) They nevertheless contend that (apparently any) Covid-related claims has been "completely preempted" by the PREP Act and therefore, regardless of the claims actually alleged in the Complaint, this Court has original jurisdiction. (*Id.* at ¶ 40.) However, a defendant cannot "create" federal jurisdiction by attempting to invoke a federal statute as a possible defense; rather, federal question jurisdiction must arise directly out of the claims alleged in a complaint. *Caterpillar, Inc., supra*, 482 U.S. at 393. Put succinctly, only cases which invoke a federal question **and could have originally been filed in federal court may be removed to federal court by a defendant.** *Id.* at 392-393.

There is absolutely nothing about Plaintiffs' complaint for "Elder Abuse," "Willful Misconduct," and "Wrongful Death" which gives rise to a federal question which would have made filing the complaint appropriate - or even allowable - in federal court. (See generally Complaint, Doc. 1-3.)

Nevertheless, Redwood Springs asserts 28 U.S.C. section 1331 federal question jurisdiction, claiming the PREP Act is a "complete preemption" statute, which would allow them to circumvent the well pleaded complaint rule. They are wrong.

**2. Case Law and The PREP Act Text Itself Shows That The PREP Act Does Not Preempt State Law; Arguments That It Does Are Poorly Reasoned, And The OGC's Advisory Opinion Is Unpersuasive.**

As set forth above, the PREP Act is invoked when the Secretary of the Department of Health and Human Services ("HHS") issues a declaration determining–for purposes of the PREP Act–that a disease or other health condition constitutes a public health emergency. 42 U.S.C. § 247d-6d(b). If the Secretary determines that such conditions exist, he or she "may make a declaration, through publication in the Federal Register, recommending . . . the manufacture, testing, development, distribution, administration,

///

or use of one or more covered countermeasures, and stating that [42 U.S.C. § 247d-6d(a)] is in effect with respect to the activities so recommended." *Id.*

Plaintiffs do not dispute that the Secretary has issued such a declaration regarding the COVID-19 pandemic, but that declaration has no application to the basic *state law claims* at issue here, regarding a nursing home's *failures*.

The PREP Act was initially enacted in 2005 to protect vaccine manufacturers from any financial responsibility for vaccines used to combat a declared public health emergency. The immunity applies to "covered countermeasures," which is a defined term.

A "covered countermeasure" under the PREP Act is a drug, biological product, or device that is a "qualified pandemic or epidemic product" or a "security countermeasure," or is authorized for emergency use under the Federal Food, Drug, and Cosmetic Act. *Id.* at § 247d-6d(i)(1). It also includes a "respiratory protective device that is approved by the National Institute for Occupational Safety and Health." *Id.* And the COVID-19 Declaration more specifically defines covered countermeasures as "any antiviral, any other drug, any biologic, any diagnostic, any other device, or any vaccine, used to treat, diagnose, cure, prevent, or mitigate COVID-19 . . . or any device used in the administration of any such product, and all components and constituent materials of any such product." 85 Fed. Reg. 15198 at 15202.

Complete preemption is a very narrow and rare doctrine, and it is Redwood Springs' burden to show that the PREP Act applies to Plaintiffs' allegations, and it has not. See *TPS Utilicom Servs. v. AT&T Corp.*, 223 F.Supp. 1089, 1097-1098, citing *Holman v. Laulo-Rowe Agency*, 994 F.2d 666, 668 (9th Cir. 1993) ("The test is whether Congress clearly manifested an intent to convert state law claims into federal-question claims.").

Redwood Springs offers two district court cases and the PGC's Advisory Opinion as the basis for this Court to make a finding of complete preemption; a recent decision from the district court in the District of Colorado aptly rejects all of the arguments presented by Redwood Springs, in a well-reasoned analysis. As stated by the Court in *Khalek*, *supra*:

///

///

The Tenth Circuit in *Devon Energy* noted that assessing a claim of complete preemption requires a two-part analysis: (1) "whether the federal regulation at issue preempts the state law relied on by the plaintiff;" and (2) "whether Congress intended to allow removal in such a case, as manifested by the provision of a federal cause of action to enforce the federal regulation." *Devon Energy*, 693 F.3d at 1205 (internal quotation marks and alterations omitted) (citing *Schmeling v. NORDAM*, 97 F.3d 1336, 1340 (10th Cir. 1996)). It has cautioned that "courts should begin their inquiry with the second prong." *Id.* at 1206.

Here the second prong makes clear that the PREP Act does not completely preempt state causes of action. Though Congress did provide a federal cause of action to enforce the PREP Act, it is narrow and applies only to "willful misconduct" by covered persons using covered countermeasures. 42 U.S.C. § 247d-6d(d)(1). Indeed, the primary method for resolving claims under the PREP Act is a regulatory program, the CICP, not a federal cause of action. *Id.* § 247d-6e. Exclusive jurisdiction for negligence and recklessness claims, likely the vast majority of PREP Act claims, thus rests with the CICP—not with federal courts. As another court addressing this exact issue explained, "[t]he PREP Act does not provide the exclusive cause of action for claims that fall within its scope; in fact, for the most part, the Act provides no causes of action whatsoever. The PREP Act is, at its core, an immunity statute; it creates no rights, duties, or obligations." *Schuster v. Percheron Healthcare, Inc.*, 493 F. Supp. 3d 533, 537 (N.D. Tex. 2021) (holding that the PREP Act did not completely preempt state law claims).

This conclusion is further bolstered by the text of the PREP Act's preemption provision. It states that no state or other political subdivision may create or enforce a law that "is different from, or is in conflict with" the PREP Act. 42 U.S.C. § 247d-6d(b)(8). This language indicates not that any and all state claims related to COVID-19 are preempted, but only those that conflict with or differ from the PREP Act are preempted. The Act itself thus provides only for conflict preemption. It does not confer Article III court jurisdiction over plaintiff's claims. Though no Court of Appeals has yet to address this question, I have reviewed over sixty district court decisions analyzing it. The overwhelming majority—all but two—found no complete preemption by the PREP Act. *E.g., Est. of Maglioli v. Andover Subacute Rehab. Ctr. I*, 478 F. Supp. 3d 518, 528 (D.N.J. 2020) (finding that 42 U.S.C. § 247d-6d(b)(8)] pertains to "conflict preemption" but does not mandate a federal forum or completely preempt all state law claims); *Martin v. Serrano Post Acute LLC*, No. CV 20-5937 DSF (SKX), 2020 WL 5422949, at *2 (C.D. Cal. Sept. 10, 2020) ("[M]ere immunity against state law or preemption of state law is not the equivalent of complete preemption and does not provide removal jurisdiction.").

*Khalek*, *supra*, 2021 U.S. Dist. LEXIS 113165.

///

///

///

The *Khalek* court – and many others – similarly found the OGC's Advisory Opinion 21-01, which is also heavily relied on by Defendants, wholly unpersuasive. Courts that have analyzed case authority and the PREP Act itself have universally rejected the OGC's shallow and unpersuasive arguments which claim complete preemption should apply.

First, the Opinion is not a final agency action and cannot have the force or effect of law, despite Defendants' reliance on it as if it does. *Dupervil v. All. Health Operations, LCC*, No. 20CV4042PKCPK, 2021 U.S. Dist. LEXIS 20257, 2021 WL 355137, at *10 (E.D.N.Y. Feb. 2, 2021); *see also Schuster*, 493 F. Supp. 3d at 538 ("[T]he plethora of cases rejecting the Advisory Opinion's position . . . possess a much larger 'power to persuade' than the Advisory Opinion."); *Smith v. Colonial Care Ctr., Inc.*, No. 2:21-CV-00494-RGK-PD, 2021 U.S. Dist. LEXIS 53554, 2021 WL 1087284, at *6 (C.D. Cal. Mar. 19, 2021) (refusing to defer to Adv. Op. 21-01). It therefore also lacks the "power to persuade." *Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S. Ct. 161, 89 L. Ed. 124 (1944).

Additionally, the other district court cases that Defendants rely on which adopted the OGC's "opinion" have resoundingly rejected it. *See e.g., Est. of Jones through Brown v. St. Jude Operating Co.*, LLC, No. 3:20-CV-1088-SB, 2021 U.S. Dist. LEXIS 43222, 2021 WL 886217, at *8 (D. Or. Mar. 8, 2021) (finding that "*Garcia* is not persuasive authority, and is an outlier in light of the weight of authority holding that complete preemption does not apply here."); *Schuster*, 493 F. Supp. 3d at 537 (same).

Defendants also cite *Rachal v. Natchitoches Nursing & Rehab. Ctr. Llc*, 2021 U.S. Dist. LEXIS 105847 (W.D. La. Apr. 30, 2021) for the proposition that the PREP Act mandates complete preemption. (Doc. 1-1, Notice of Removal ¶¶ 43-44.) As stated by the *Khalek* court, however, "its analysis was thin and conclusory" and rejected by the "overwhelming majority of sister district." *Khalek*, *supra*, 2021 U.S. Dist. LEXIS 113165

Finally, Defendants then conflate the argument that complete preemption exists with the argument that the PREP Act would even apply to a claim of nonfeasance by arguing that her claim of nonfeasance "by its nature, arises out of" Defendants' "use" of covered countermeasures because if countermeasures had been used, they would have limited "the harm COVID-19 might otherwise cause thereby triggering application of the PREP Act." (Doc. 1-1, Notice of Removal ¶¶ 62.) But, again, Defendants' support

///

for this illogical argument is simply the HHS's judicial-type proclamations that the executive branch wants the PREP Act to apply. These arguments are unpersuasive and should be rejected.

Accordingly, for the reasons set forth above, Plaintiffs respectfully submit that the PREP Act is not a complete preemption statute and therefore remand is appropriate.

**D. There Are No "Important Federal Issues" Which Could Support Retaining Federal Jurisdiction Pursuant to The *Grable* Doctrine.**

Defendants also argue that even in the absence of PREP Act preemption, the Court should retain jurisdiction over these State law claims because the application of the PREP Act presents a "substantial federal question." (Doc. 1-1, Notice of Removal, ¶ 71.) Defendants claims that *Grable & Sons Metal Products v. Darue Engineering & Mfg.*, 545 U.S. 308 (2005) supports this basis for removal.

Defendants once again rely solely on "the analysis provided by and the express terms of the Secretary's Fourth Amended Declaration" in support of their claim that the *judicial* determination of the application of the *Grable* doctrine is appropriate here. (Doc. 1-1, Notice of Removal, ¶ 73.) Defendants misunderstand, or choose to ignore, the separation powers. Numerous district courts have rejected the HHS's attempt to declare an "important federal question" where simply basic state law negligence claims exist. *E.g., Bolton v. Gallatin Ctr. for Rehab. & Healing, LLC*, No. 3:20-CV-00683, 2021 U.S. Dist. LEXIS 76193, 2021 WL 1561306, at *4 (M.D. Tenn. Apr. 21, 2021) ("[N]o embedded federal issue exists because the Court could ignore entirely the PREP Act in determining whether Bolton established prima facie state-law claims for gross negligence and recklessness."); *McCalebb v. AG Lynwood, LLC,* No. 2:20-cv-09746, 2021 WL 911591, at *3 (finding no federal jurisdiction under *Grable* because "Plaintiffs' state claims do not require an interpretation, or challenge the constitutional validity, of a federal statute."); *Dupervil V. All. Health Operations, No. 20CV4042*, 2021 WL 355137, at *14 (same).

Similarly, contrary to the executive branch's dictate, rather than analysis, that *Grable* should apply, a review of the purpose of the *Grable* exception makes clear that it is not applicable here. The *Grable* court made clear that finding federal-question jurisdiction where Congress did not otherwise extend jurisdiction (such as if the PREP Act could be an affirmative defense to Plaintiffs' claims herein, even though it does not preempt state law on them) should only be in "rare" cases where extending

///

jurisdiction will not "materially affect, or threaten to affect, the normal currents of litigation." *Grable*, 545 U.S. at 319.

Litigating basic malpractice and elder abuse claims in federal court would be the epitome of upending "the normal currents of litigation." In fact, as has been made clear in a variety of basic tort settings where a federal regulation or federally regulated medical device is involved, "finding federal-question jurisdiction simply because the action involves [COVID] would open federal courts' doors to any medical malpractice case involving [COVID]. These cases are not rare and would materially affect the normal currents of litigation." *Lecce v. Medtronic, Inc.*, 2019 U.S. Dist. LEXIS 112731, *12.

Plaintiffs respectfully submit that purposefully extending federal jurisdiction over these state law claims on the false assumption that they involve an "important federal question" would disrupt Congress's intended federal-state court balance. The argument must be rejected.

**E. Redwood Springs Has Not Established Any Basis For Federal Officer Jurisdiction.**

Finally, Defendants contend that removal is proper pursuant to 28 U.S.C. § 1442(a)(1), "which provides for removal when a defendant is sued for acts undertaken at the direction of federal officer." (Doc. 1-1, Notice of Removal, ¶ 78.)

Generally speaking, "federal officer" jurisdiction exists to quell concerns that state court proceedings which involve unpopular federal laws or officials, or which are designed in order to thwart federal officials of a federal forum, do not operate to subvert federal laws or federal officers acting in their official capacities. See generally *Watson v. Phillip Morris Cos.*, 551 U.S. 142, 150. "The statute's history and th[e] Court's cases demonstrate that its basic purpose is to protect the Federal Government from the interference with its operations that would ensue were a State able, for example, to arrest and bring to trial in a State court for an alleged offense against the law of the State, officers and agents of the Government acting . . . within the scope of their authority." *Watson*, 551 U.S. at 150.

///

///

///

///

///

If it is difficult to see the application of those concerns to this medical negligence and elder abuse case whereby Plaintiffs allege an utter failure to act against a private facility, that is because there simply is no application. The *Khalek* court once again best summarized the complete lack of merit in this argument:

> Defendants argue that they are "acting under" a federal officer because they acted pursuant to guidelines and mandates issued by HHS, a federal agency. ECF No. 33 at 14. But the Supreme Court's decision in *Watson* foreclosed exactly this argument. The Court wrote that "simply complying with the law" was not enough. *Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142, 152, 127 S. Ct. 2301, 168 L. Ed. 2d 42 (2007). It explained
>
> > A private firm's compliance (or noncompliance) with federal laws, rules, and regulations does not by itself fall within the scope of the statutory phrase "acting under" a federal "official." And that is so even if the regulation is highly detailed and even if the private firm's activities are highly supervised and monitored. A contrary determination would expand the scope of the statute considerably, potentially bringing within its scope state-court actions filed against private firms in many highly regulated industries.
> >
> > *Id.* at 153.
>
> Plaintiff's case is exactly the type *Watson* warned could be erroneously brought within § 1442's ambit—a state court action in the highly regulated nursing home industry, where a private entity argues only that it has complied with the law. The federal officer removal statute does not apply here. I have reviewed dozens of decisions coming to this same conclusion as to state law claims against nursing homes during the COVID-19 pandemic. *E.g., Lyons*, 2021 WL 364640, at *3; *Dupervil*, 2021 WL 355137, at *15-16; *Maglioli*, 478 F. Supp. 3d at 535; *Martin*, 2020 WL 5422949, at *1. I thus conclude that removal under 28 U.S.C. § 1442 is improper.
>
> *Khalek, supra*, *24.

Counsel would not generally rely so heavily on another court's analysis of the issues presented herein, but the district court cases reviewing this issue have reviewed these issues herein with great thoroughness and analysis. This Court should not be required to expend its limited time and resources reinventing the wheel over an issue that has been resoundingly resolved by the district courts in this country.

///

///

## IV.

## CONCLUSION

For the reasons set forth herein, Plaintiffs respectfully request that this Court remand the case to the Superior Court of California for the County of Tulare.

Dated: July 1, 2021

BARADAT & PABOOJIAN, INC.

By: /s/ Warren R. Paboojian
Warren R. Paboojian
Jason S. Bell
Attorneys for Plaintiffs
MARX FORD; RODNEY FORD; MARVIN FORD; and MORRIS FORD